UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Joel Sigala,<br><br>   Plaintiff,<br><br> v.<br><br>Commissioner of Social Security,<br><br>   Defendant. | No. 1:23-cv-01651-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO REMAND FOR FURTHER PROCEEDINGS, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 14, 18)** |

### I. Introduction

Plaintiff Joel Sigala seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.[1]

### II. Factual and Procedural Background

On February 16, 2021, Plaintiff applied for DIB alleging disability as of December 29, 2019. The Commissioner denied the claim initially and on reconsideration. AR 172,188. The ALJ held a hearing on February 27, 2023. The ALJ issued an unfavorable decision on March 22, 2023. AR 1306–26. The Appeals Council denied review and this appeal followed.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is evidence that could lead a reasonable mind to accept a conclusion.

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Doc. 8, 9.

*See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).  The court must consider the record as a whole and may not affirm by isolating supporting evidence.  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability, 2- whether the claimant had medically determinable "severe impairments," 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. See, 20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of December 29, 2019. AR 1311. At step two the ALJ found that Plaintiff had the following severe impairments: history of concussion, migraine headaches, right shoulder impairment, right knee impairment, mild cervical spondylosis, asthma, posttraumatic stress disorder ("PTSD"), depressive disorder, anxiety disorder, and neurocognitive disorder. AR 1312. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 1312–13.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with the following limitations:

> the claimant is limited to occasional postural activities, no ladders, scaffolds or ropes, occasional overhead reaching with the right upper extremity, no unprotected heights or dangerous machinery, and should avoid pulmonary irritants. The claimant is limited to simple routine tasks, no jobs requiring public interaction, no fast paced work such as rapid assembly or conveyor belt work, and no significant changes in work routine. AR 1314–21

At step four the ALJ found that Plaintiff could not perform his past relevant work as a residential energy technician. AR 1321. At step five, in reliance on the Vocational Expert's testimony, the ALJ concluded that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including: 1- Mail Sorter, 2- Merchandise Marker, 3- Collator Operator. AR 1322–23. The ALJ therefore concluded that Plaintiff was not disabled since the alleged disability onset date of December 29, 2029. AR 1323.

### V. Issues Presented

Plaintiff asserts two claims of error: 1-"The ALJ's RFC determination is unsupported by substantial evidence as he failed to explain the discrepancy between the opinion evidence regarding Plaintiff's mental impairments he found persuasive and the RFC in accordance with the regulations" and, 2- "the ALJ's RFC determination is unsupported by substantial evidence as he

3

failed to explain the discrepancy between the opinion evidence regarding Plaintiff's physical impairments he found persuasive and the RFC in accordance with the regulations."

### A. RFC

#### 1. Legal Standard

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id*

#### 2. Analysis

##### a. Mental RFC

Plaintiff contends the ALJ failed to incorporate the opinion of psychological consultative examiner Dr. Williamson, who opined that Plaintiff was limited to "simple one or two step job instructions." MSJ at 4–5 (citing AR 796). Importantly however, that is not what Dr. Williamson

opined. Rather, Dr. Williamson opined that Plaintiff had: 1- <u>no impairment</u> in his ability to perform simple one or two step job instructions; and 2- a <u>mild-to-moderate impairment</u> in his ability to perform detailed and complex instructions. AR 796–97.

The RFC represents "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). If Plaintiff could <u>solely</u> perform simple one or two step job instructions, then his ability to perform detailed and complex instructions would be nonexistent. But Dr. Williamson did not opine that Plaintiff's ability to perform detailed and complex instructions was non-existent, rather Dr. Williamson opined that Plaintiff's ability was mild-moderately impaired. AR 796–97. Thus, there is no basis here to find that the RFC—which limited Plaintiff to simple and routine tasks—is inconsistent with Dr. Williamson's opinion.

Further, despite Plaintiff's contention that Dr. Williamson's opinion is inconsistent with the demands of jobs requiring "Level 2" reasoning ability—such as those identified by the VE— jobs with a reasoning level of 2 are in fact compatible with a limitation to simple work as the Ninth Circuit, this Court, and other courts have uniformly held. *See Davis v. Saul*, 846 F. App'x 464, 466 (9th Cir. 2021) ("simple work is consistent with positions requiring Reasoning Level 2."); *Cervantes v. O'Malley*, No. 1:22-CV-1565 JLT GSA, 2024 WL 1173827, at *4 (E.D. Cal. Mar. 19, 2024) ("The Ninth Circuit has repeatedly indicated the ability to perform "simple" work corresponds with Reasoning Level 2 abilities.); *Meissl v. Barnhart*, 403 F. Supp. 2d 981 (C.D. Cal. 2005) (finding no conflict between limitation to simple/routine tasks and jobs with a reasoning level of R2).

### b.  <u>Physical RFC</u>

Plaintiff next contends the ALJ failed to provide an explanation for rejecting the opinion of Dr. Siekerkotte—the consultative examiner—that Plaintiff was limited to occasional right sided forward reaching, and never reaching overhead due to Plaintiff's limited right shoulder range of motion. AR 785. Here, the RFC limited Plaintiff to occasional overhead reaching and no limitation

on forward reaching, and the ALJ explained that Dr. Siekerkotte's opinion—without any stated exception for the reaching limitations identified therein—was "generally consistent with the medical record and generally supported by Dr. Siekerkotte's own findings . . ." AR 1320.

Defendant argues that the ALJ's discussion of Dr. Siekorkotte's opinion—and the ALJ's discussion of the evidence more generally—was adequate and well-grounded in the required regulatory considerations applicable to all opinion evidence, namely supportability and consistency.

First, Defendant emphasizes the prior administrative medical findings (PAMFs) of Drs. Bobba and Rugama at the initial and reconsideration levels, respectively, which found that Plaintiff could perform occasional overhead reaching on the right with no limitations as to forward reaching. Resp. at 7 (citing AR 87–90; AR 115–118). To the extent Defendant contends these PAMFs constitute substantial evidence on their own, it is not accurate. PAMFs in and of themselves carry minimal evidentiary value. Rather, they constitute substantial evidence only when supported by independent clinical findings or other evidence. *Saelee*, 94 F.3d at 522; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Defendant further contends that the ALJ appropriately cited the "relatively mild to moderate diagnostic imaging findings." AR 1320 (citing Ex. C2F/28–29, 36, 48, 87). The discussion is unpersuasive for several reasons. To begin, as noted above—the ALJ's discussion of these MRI findings was immediately preceded by a statement that Dr. Siekerkotte's opinion was "generally consistent with the medical record and generally supported by Dr. Siekerkotte's own findings" AR 1320. The ALJ then provided a number of reasons why the record showed Plaintiff was not significantly limited overall. However, in explaining that Dr. Siekerkotte's opinion was generally consistent with and supported by the record, the ALJ did not highlight any exceptions to that generalization—such as reaching limitations. The ALJ thus did not demonstrate awareness of the

6

fact that Dr. Siekerkotte's opinion described <u>more restrictive</u> reaching limitations than the RFC did, and that the ALJ was in fact rejecting—not adopting—that portion of Dr. Siekerkotte's opinion.

Secondly, the "relatively mild to moderate diagnostic imaging findings" was yet another generalization in so far as the cited imaging findings included imaging of the elbow, cervical spine, and shoulder. AR 1320 (citing Ex. C2F/28–29, 36, 48, 87). In doing so, the ALJ thus dispenses with the imaging as relatively mild to moderate overall finding and avoids the more difficult task of squarely addressing Plaintiff's right shoulder. Further, it is not apparent that the imaging of Plaintiff's right shoulder was "relatively mild to moderate." Defendant describes the MRI findings as follows: "some degenerative changes but had an intact rotator cuff with no evidence of a tear and only a 'small' effusion with a 'tiny' amount of fluid, and 'slight' irregularity with thickening in the joint." (Resp. at 9 (citing AR 1316–17 citing AR 383)).

The Defendant's description of the MRI findings is somewhat inaccurate. The MRI report listed 5 distinct findings. The first finding was "degenerative changes along the acromioclavicular and glenohumeral joints." AR 383. The severity of the degenerative changes was not described. AR 383. The second and third findings did describe intact rotator cuff, small effusion and a tiny amount of fluid as Defendant explains. *Id.* The fourth finding was "thickening of the shoulder capsule inferiorly," and the fifth finding was "slight irregularity involving anterior/inferior glenoid labrum. *Id.* Defendant inverts the order of the fourth and fifth diagnostic findings, giving the impression that "slight irregularity" described the thickening of the joint when in fact the severity of the thickening was not described. *Id.*

As to the clinical examinations, Defendant emphasizes the following findings the ALJ described:

> For example, Plaintiff's physical examinations generally showed no shoulder atrophy; normal grip, wrist, bicep, triceps, deltoid, and supraspinatus (shoulder muscle) strength; and normal shoulder sensation (see, e.g., AR 1037 (May 2022); see also AR 1318 citing AR 389, 411, 116, 499, 511, 829 (referencing Plaintiff's

normal gait at various examinations that show similarly benign shoulder findings).

Full muscle strength, no atrophy, and normal sensation are more indicative of weight lifting ability than reaching ability, and Dr. Siekerkotte similarly noted benign findings in those respects. Range of motion would be more relevant to reaching. To that end, Dr. Siekerkotte noted painfully limited range of motion in the right shoulder. AR 784. In flexion for example, Plaintiff was limited to 0 to 90 degrees (zero is hands hanging at one's side, and 90 degrees is hands reach directly out in front, parallel to the floor). *Id.* Normal range for shoulder flexion is approximately 180 degrees (arms pointing directly upward).[2] Hence, Dr. Siekerkotte opined Plaintiff was limited to occasional forward reaching and no overhead reaching. Further, Dr. Siekerkotte expressly stated that this limitation was "based on decreased shoulder range of motion," and not based on deficits in muscle bulk, muscle strength, or sensation.

Defendant further emphasizes the ALJ's finding that Plaintiff "demonstrated an unwillingness to comply with treatment indicating do what is necessary to improve his condition" (AR 1320 citing AR 412 ("not performing recommended home physical exercises" and "declined pain medication"), 441 ("discharged from therapy" treatment for shoulders, after one session, because Plaintiff "did NOT return"), 455 ("Declines injection or [physical therapy]"); see AR 1318; see also, supra, at n.6).

The failure to perform home exercises and the declining of pain medication (AR 412) was noted in treatment records addressing Plaintiff's cervical spine, not his right shoulder. The decision to decline injections, and the failure to return to physical therapy after one visit were indeed related to the right shoulder. AR 411, 455. However, this is not an altogether a sound basis upon which to reject Dr. Siekerkotte's opinion as to Plaintiff's reaching ability. Defendant also rebuts Plaintiff's testimony as to the reasoning for his delayed shoulder surgery, namely that Plaintiff

---

[2] https://archive.cdc.gov/www_cdc_gov/ncbddd/jointrom/index.html

8

cancelled each time. Resp. at 8. However, the ALJ did not make this observation or connect it to Plaintiff's reaching ability.

Defendant closes by explaining "Even if the ALJ has explained his decision on Plaintiff's reaching limitations with 'less than ideal clarity, this Court 'must uphold it' if the ALJ's 'path may reasonably be discerned,' as it can be here. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (citations and internal quotation marks omitted)." But ALJ's reasoning here cannot be adequately discerned given: 1- the ALJ found Dr. Siekerkotte's opinion generally supported by and consistent with the record—without express exception— demonstrating an intention to adopt, not reject, Dr. Siekerkotte's opinion; 2- the ALJ did not identify Plaintiff's reaching ability as an area where the RFC departed from Dr. Siekerkotte's opinion; and 3- the only evidence the ALJ identified for rejecting more stringent RFC restrictions was part of a broader point about a) benign imaging (not an accurate characterization of the shoulder MRI), benign exams (not accurate as it concerns ROM, which was Dr. Siekerkott's express basis for the reaching limitations), and resistance to treatment including injections and physical therapy.

Evidence supportive of reaching limitations included: 1-Plaintiff's limited shoulder ROM on exam, including 50% reduced shoulder ROM in flexion (directly relevant to reaching forward and overhead), 2- degenerative changes and thickening on MRI (albeit of unspecified severity), and 3- Dr. Siekerkotte's examining opinion that Plaintiff could only reach occasionally forward and never overhead. Thus, neither the ALJ nor Defendant identified significant countervailing evidence.

### VI. Findings

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Remand is warranted for the ALJ to reevaluate the evidence concerning Plaintiff's right sided reaching ability and to articulate a reasoned conclusion whether Dr.

Siekerkotte's associated opinion is to be accepted or rejected, and why.

### VII.   Recommendations

For the reasons stated above, the recommendation is that:

1. Plaintiff's motion for summary judgment (Doc. 14) be **GRANTED.**

2. Defendant's cross-motion (Doc. 18) be **DENIED.**

3. The matter be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Findings and Recommendations.

4. That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

### VIII.   Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case per 28 U.S.C. § 636(b)(l). Within 14 days of these Findings and Recommendations, any party may file written objections. The document should be titled "Objections to Magistrate Judge's Findings and Recommendations."  The failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **March 11, 2025**               /s/ Gary S. Austin
                                     UNITED STATES MAGISTRATE JUDGE